UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERALD E. HOLCOMB,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:17-cv-02268-KJM-CKD<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff Jerald E. Holcomb seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").[1] Plaintiff filed a motion for summary judgment. (ECF No. 18.) The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment. (ECF No. 24.) Thereafter, plaintiff filed a reply brief. (ECF No. 25.)

After carefully considering the record and the parties' briefing, the undersigned recommends that plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion for summary judgment be GRANTED, and the Commissioner's final decision be AFFIRMED.

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15)

1

I.   BACKGROUND

Plaintiff was born on January 28, 1969; passed the California High School Proficiency Exam and completed about a year and a half of college; is able to communicate in English; and previously worked as a car salesperson and a cab driver.[2]  (Administrative Transcript ("AT") 45, 68, 278.)  On February 12, 2013, plaintiff applied for SSI, alleging his disability began on April 9, 1989.  (AT 278.)  Plaintiff later amended the alleged onset date to February 12, 2013.  (AT 40.)  Plaintiff claimed that he was disabled due to attention-deficit hyperactivity disorder ("ADHD"); right shoulder surgery; left tibia and right femur intermedular rods; right hip dislocated to implant rod; left knee displaced to insert rod; head injury at age 6 (fell off roof); brain injury from April 1989 motorcycle injury; several degenerating discs in the spine; as well as limited movement in left leg due to fibula and tibia fusion.  (AT 104-05.)

After plaintiff's application was denied initially and on reconsideration, an ALJ conducted two hearings: on September 9, 2015 and August 18, 2016.  (AT 36-103.)  The ALJ subsequently issued a decision dated October 5, 2016, determining that plaintiff had not been under a disability as defined in the Act, since February 12, 2013.  (AT 17-29.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on August 24, 2017.  (AT 1-3.)  Plaintiff filed this action on October 20, 2017, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

II.   ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly weighed the medical opinion evidence; (2) whether the ALJ improperly discounted plaintiff's credibility; and (3) whether the residual functionary capacity ("RFC") determination was supported by substantial evidence.[3]

/////

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] Plaintiff's opening brief raises the issues in a somewhat different order.

2

III. LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

"[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947). At the same time, in the context of Social Security appeals, "[a]s a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion. It is proper for us to read the . . . opinion, and draw inferences . . . if those inferences are there to be drawn." Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989).

IV. DISCUSSION

A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard five-step analytical framework.[4] At step one, the ALJ concluded that plaintiff has not engaged in

---

[4] Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-

3

substantial gainful activity since February 12, 2013, the amended alleged onset date. (AT 19.) At step two, the ALJ found that plaintiff has the following severe impairments: history of metal rod placement in right femur and right hip; history of metal rod placement in the left tibia and left knee; status post right shoulder surgery; obesity; cervical spine degenerative disc disease; and mood disorder due to traumatic brain injury. (Id.) However, at step three the ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 20.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC, finding that plaintiff could perform light work as defined in 20 C.F.R. § 416.967(b), with the following limitations:

> alternate sitting and standing every 30 minutes; need to use a cane for prolonged ambulation or upon uneven terrain; occasional postural activities; frequent reaching with the right, dominant upper extremity; repetitive range of motion of the cervical spine is limited to occasional; frequent bilateral overhead work; no work at unprotected heights; off task 5% of the time; limited to low stress work (i.e., no fast-paced productions and only occasional changes);

---

42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

> and occasional, brief and superficial interaction with the public, coworkers, and supervisors.

(AT 21-22.)

In reaching this RFC, the ALJ detailed plaintiff's subjective complaints, the lay observations of plaintiff's mother, the treatment plaintiff received for his physical impairments, and the treatment he received for his mental impairments. (AT 22-26.) The ALJ also explicitly considered and accorded differing weight to ten separate medical opinions. (AT 24-27.) Additionally, the ALJ explicitly discounted plaintiff's credibility as to the severity of his impairments. (AT 22-23, 27.)

At step four, the ALJ determined that plaintiff is unable to perform any past relevant work. (AT 27.) However, at step five, the ALJ found that, in light of plaintiff's age, education, work experience, RFC, and the testimony of a vocational expert, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed. (AT 27) Thus, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, since February 12, 2013, the amended alleged onset date. (AT 28.)

B. Plaintiff's Substantive Challenges to the Commissioner's Determinations

1. *Whether the ALJ improperly weighed the medical opinion evidence*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) there are contradictory opinions in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830–31. In contrast, a contradicted opinion of a treating or examining

professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Here, plaintiff asserts that the ALJ erred by improperly rejecting the opinions of two examining practitioners and one treating practitioner. (ECF No. 18 at 25-27.)

i. **Opinions of Omar Bayne, M.D.**

On July 15, 2013, plaintiff had his first consultative orthopedic examination with Omar Bayne, M.D., which the ALJ thoroughly and accurately summarized in her decision. (See AT 23, 751-57.) In May 2014, plaintiff was involved in a motorcycle accident. (AT 857.) Thereafter, plaintiff underwent a second consultative orthopedic examination with Dr. Bayne on October 27, 2015. (AT 1005-08.) On November 18, 2015, Dr. Bayne provided a check-box medical source statement based upon this examination. (AT 1014-19.) Again, the ALJ thoroughly and accurately summarized Dr. Bayne's second examination. (See AT 23-24.) Then, when weighing these opinions, the ALJ explained

> I accord partial weight to the July 2013 consultative orthopedic examiner's assessment. The same consultative orthopedic examiner had the opportunity to evaluate the claimant again in October 2015. The subsequent, more recent report demonstrates that the claimant's physical condition was worsening (e.g. use of a cane). I find that

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

6

> greater physical restrictions per the more recent report are reasonable given the following reasons: the claimant has aged since the prior examination, he sustained a second motorcycle accident in May 2014, and his physical impairments are generally degenerative in nature. Accordingly, I assign partial weight to the July 2013 consultative orthopedic examiner's report, and assign greater weight to the more recent October 2015 report [AT 751-57, 1005-08, 1014-19]. The physical portion of the residual functional capacity is generally based upon the functional limitations stemming from the more recent October 2015 report [AT 1005-08, 1014-19].

(AT 25.)

Plaintiff asserts that the ALJ erred because she did not "adopt or give any reasons for rejecting Dr. Bayne's [2015] opinion that Mr. Holcomb is limited to standing and walking 4 hours. . . . [or] for rejecting Dr. Bayne's [2015] opinion that Mr. Holcomb 'would need a cane to prevent falling and to assist when ambulating for more than a block.'" (ECF No. 18 at 25.) However, it is inaccurate to claim that the ALJ rejected Dr. Bayne's 2015 opinion—she clearly gave great weight to the 2015 opinion. (<u>See</u> AT 25.) Indeed, plaintiffs' argument here does not actually challenge the weight the ALJ gave to Dr. Bayne's opinions. Rather, plaintiff is arguing that the ALJ erred because the RFC does not precisely mirror Dr. Bayne's 2015 opinion. This argument is wholly unpersuasive.

An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545). The ALJ's RFC determination need not precisely reflect any particular medical provider's assessment. <u>See</u> <u>Turner v. Comm'r Soc. Sec. Admin.</u>, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (the ALJ properly incorporated physician's observations in the RFC determination while, at the same time, rejecting the implication that plaintiff was unable to "perform simple, repetitive tasks in an environment without public contact or background activity").

Here, Dr. Bayne indicated in his November 2015 medical source statement that, in an 8 hour work day, plaintiff could sit for a total of 6 hours, stand for a total of 4 hours, and walk for a

7

total of 4 hours.  (AT 1015.)  Dr. Bayne also opined that plaintiff needs a cane to ambulate more than one block.  (Id.)  Giving this 2015 opinion significant weight, the ALJ assessed a "light work" RFC, which is consistent with an individual who can walk for 4 hours, stand for 4 hours, and sit for 6 hours.  See 20 C.F.R. § 416.967(b) (defining "light work" as requiring "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls").  Similarly, the ALJ translated Dr. Bayne's finding regarding plaintiff's use of a cane into the RFC by indicating that plaintiff was allowed "a cane for prolonged ambulation or upon uneven terrain."  (AT 21.)

Therefore, the ALJ did not reject Dr. Bayne's 2015 opinion even though the RFC does not precisely reflect his assessment.  See Turner, 613 F.3d at 1222-23.

### ii. **Opinion of Jenny Forman, Ph.D.**

On July 17, 2013, plaintiff underwent a consultative psychological examination with Jenny Forman, Ph.D.  (AT 759-62.)  Later in 2013, plaintiff's medical records were reviewed by State agency medical consultants who provided mental residual functional capacity assessments.  (AT 119-21, 143-44.)  Then, in November 2015, plaintiff underwent another consultative psychological examination with Robert W. Poston, Ph.D.  (AT 997-02, 1011-13.)

Plaintiff does not challenge the weight given to these opinions.  Rather, he asserts that the ALJ improperly ignored Dr. Forman's specific assessment that plaintiff was able to work from 4 to 8 hours a day.  (ECF No. 18 at 26.)  This argument is similarly flawed as plaintiff's argument concerning Dr. Bayne's opinions.  First, as explained, the ALJ is responsible for determining the RFC, which is not required to precisely reflect Dr. Forman's assessment.  See Turner, 613 F.3d at 1222-23.

Second, the ALJ did not ignore Dr. Forman's opinion, but rather, explicitly considered it.  (See AT 25-26, 997-02, 1011-13.)  As the ALJ explained,

> I considered the mental State agency medical consultants' opinions, as well as the July 2013 consultative psychological examiner's opinion [from Dr. Forman], all of which are generally consistent with each other and indicate up to moderate limitations in the area of concentration, persistence, and pace, but mild limitations in activities or daily living and social functioning. . . . I accord partial weight to these opinions.  However, the subsequent medical opinion from the

8

> November 2015 consultative psychological examiner [Dr. Poston] ... indicates the need for moderate social functioning limitations. The treatment notes . . . do suggest that the claimant has had more notable mental symptoms starting around 2016 [AT 1024-62]. Whereas the initial consultative psychological examiner opined to a GAF[6] score of 60 in July 2013, the more [recent] consultative psychological examiner from November 2015 opined to a GAF score of 55, which again, reflects a somewhat worsening of mental functioning in more recent times. Both GAF scores appear generally compatible with the medical evidence at the times they were rendered and are accorded significant weight. Based on the overall evidence, I find that the addition of moderate limitation in social functioning appears reasonable. Accordingly, I accord great weight to the November 2015 consultative psychological examiner's opinion.

(AT 26.)

Clearly, the ALJ did not reject Dr. Forman's opinion without consideration. Instead, she gave more weight to Dr. Poston's later opinion because it was based upon more recent findings that were slightly more severe than those of Dr. Forman, and because it was more consistent with plaintiff's documented medical history as a whole. As a result, the ALJ included the following mental limitations in plaintiff's RFC: "off task 5% of the time; limited to low stress work (i.e., no fast-paced productions and only occasional changes); and occasional, brief and superficial interaction with the public, coworkers, and supervisors." (AT 21-22.)

Therefore, the mental RFC reflects the ALJ's reasonable weighing of the medical evidence, which is largely unchallenged by plaintiff and supported by substantial evidence in the record.

Furthermore, the ALJ was not required to discuss Dr. Forman's specific finding that plaintiff is able to work from 4 to 8 hours a day because it is ambiguous, unsupported, and conclusory. When "interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted). "[T]he ALJ is not required to discuss evidence that is neither significant nor probative." Id.

---

[6] A global assessment of functioning or "GAF" score reflects a clinician's rating, on a continuum of mental health-illness (0-100), of a patient's overall functioning. Diagnostic and Statistical Manual of Mental Disorders, (4th Edition 1994) (DSM-IV), American Psychiatric Ass'n, pages 30-32.

Still, plaintiff asserts that the ALJ erred by failing to discuss this limitation because such a limitation means that plaintiff is incapable of maintaining full-time employment. (ECF No. 18 at 26 ("Dr. Forman opined that Mr. Holcomb was able to work from 4 to 8 hours a day. . . . Obviously, on the days he was able to work only 4 hours, or less than 8, he would not be able to perform full-time work").) Even assuming, without deciding, that plaintiff's interpretation of this ambiguous statement is correct, such a severe limitation is not supported by the objective evidence in the record.

Neither Dr. Forman nor Dr. Poston found that plaintiff was more than moderately limited in any of the areas of mental and social functioning. (See AT 761-62, 1011-12.) Such moderate limitations are consistent with the RFC the ALJ assessed here, and not with a finding of disability. Additionally, Dr. Poston's opinion—which the ALJ accorded more weight and which was based upon more severe findings than those of Dr. Forman—did not include this unsupported and ambiguous limitation. (Id.)

### iii. **Opinions of Esker-D Ligon, N.P.**

In 2015 and 2016, plaintiff received care within the Kaiser network from both psychiatric nurse practitioner Esker-D Ligon and gastroenterologist Philip Wong, M.D. (See AT 804, 1025-32.) On June 30, 2015, N.P. Ligon provided a conclusory one-page report opining that plaintiff was totally disabled due to the symptoms of his mood disorder. (AT 804.)

On March 2, 2016, after missing a gastroenterology appointment with Dr. Wong, plaintiff presented to N.P. Ligon with complaints regarding his mood disorder. (AT 1025-26.) N.P. Ligon noted that plaintiff "is obviously disabled by symptoms" and that "[g]iven the . . . duration of his symptoms it is questionable if he will achieve functional remission to the extent that he can maintain gainful employment." (AT 1026.)

Plaintiff mistakenly attributes the March 2, 2016 treatment note to Dr. Wong and asserts that the ALJ erred because "she did not mention Dr. Wong's opinions or give any reasons for rejecting them." (ECF No. 18 at 26.) This argument is completely unavailing.

First, the ALJ did not ignore N.P. Ligon's 2016 assessment. In fact, the ALJ specifically discussed the treatment notes from this visit, and accurately summarized that

> [m]ental status examination showed that the claimant had brought his emotional support pet with him. He was mildly irritable, with slightly pressured speech, and anxious/dysthymic mood. His thought process at the time was perseverating because he was concerned over a possible MS diagnosis. However, he was fully oriented with normal attention span and fair insight/judgment.

(AT 25, 1026.) Then, when the ALJ gave significant weight to the opinion of Dr. Poston, she cited to these same treatment notes, explaining that they "suggest that the claimant has had more notable mental symptoms starting around 2016." (AT 26.) Thus, the ALJ clearly considered the objective findings of N.P. Ligon.

Second, because plaintiff misattributes the statements in question to Dr. Wong, he fails to recognize that N.P. Ligon's 2016 assessment essentially mirrors her 2015 opinion, which the ALJ specifically considered and gave little weight. (See AT 26-27, 804, 1026.) Plaintiff does not challenged the weight the ALJ gave to N.P. Ligon's 2015 opinion, and the court finds that the ALJ reasonably discounted this opinion for the following reasons:

> (1) Social Security Ruling 96-5p provides in pertinent part that the final responsibility for deciding issues such as whether or not a claimant is "disabled" is reserved to the Commissioner; (2) nurse practitioners are not considered an "acceptable medical source" in the Regulations (20 CFR 416.913); and (3) the nurse practitioner provided only a brief list of symptoms and did not provide a function-by-function analysis nor cite to any specific medical evidence in support of a "disability" finding.

(AR 26-27.) Each of these unchallenged reasons for rejecting the N.P. Ligon's 2015 opinion is equally germane to her 2016 assessment. Thus, any error in not explicitly rejecting the 2016 assessment is harmless, and does not warrant reversal. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless").

Therefore, the ALJ properly weighed the medical opinions in this matter, providing several specific and legitimate reasons based upon substantial evidence in the record.

2. *Whether the ALJ improperly discounted plaintiff's credibility*

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

11

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking. . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958–59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

As an initial matter, the court notes that the ALJ did not entirely discredit plaintiff's allegations of physical and mental impairments. Indeed, as detailed above, the ALJ limited plaintiff to light work with additional physical limitations, allowed him to use a cane, and limited the stress level of his work, as well as his interactions with the public, coworkers, and

12

supervisors. (AT 21-22.) Nevertheless, to the extent that the ALJ discounted plaintiff's testimony regarding his symptoms and functional limitations, the ALJ provided specific, clear, and convincing reasons for doing so.

### i. Objective medical evidence

"[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)).

Although lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch, 400 F.3d at 681.

Here, the ALJ determined that "the claimant's severe impairments can reasonably be expected to cause some functional limitations. However, the extent of the alleged symptoms and functional restrictions are not entirely consistent with the medical evidence and other evidence in the record." (AT 22-23.) The ALJ supported this conclusion with a lengthy and accurate discussion of plaintiff's medical records and, as explained above, a reasonable weighing of the medical opinions in the record. (See AT 23-27.)

### ii. Daily activities

Substantial evidence supports the ALJ's finding that plaintiff's daily activities are inconsistent with his allegations of disabling symptoms and limitations. (See AT 27, 310-27, 759, 998.)

"While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112–13 (citations and quotation marks omitted); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability to care for her own

13

needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility).

Here, the ALJ accurately observed that

> [t]he claimant's self-reported activities of daily living appear consistent with the ability to perform work activity within the confines of the above residual functional capacity. For example, the claimant has no problem living alone and managing his personal care, preparing daily meals, and caring for his dog. The function reports indicate the ability to watch television, ride his motorcycle to the store, listen to music, and water the flowers. Further, he is able to shop in stores, go out alone, and manage money. . . . He also reportedly is able to play games with others on a weekly/bi-weekly basis (e.g. bocce [ball], horseshoes, chess, croquette, board games, and card games). . . . He informed the consultative psychological examiners that he spends his time riding his motorcycle, gardening, cooking, and spending time with friends.

(AT 27 (citing AT 310-27, 759, 998).)

To be sure, the record also contains some contrary evidence—such as plaintiff needing a cane, being unable to participate in vigorous sports or to mow his lawn, and having to use his non-dominate hand for games like bocce ball—suggesting that plaintiff's activities are more limited. (AT 311-16.) However, it is the function of the ALJ to resolve any ambiguities, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). As the Ninth Circuit explained:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible. But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ. . . . Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

/////

/////

iii. **Personal observations at hearing**

Although the ALJ's observations of the claimant at the hearing may not form the sole basis for discrediting the claimant's testimony, such observations may be used in the overall credibility evaluation. Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985); SSR 96-7p, at *8.

When assessing plaintiff's mental limitations, the ALJ determined that her own observations supported less severe limitations than what plaintiff alleged. Specifically, the ALJ determined that the record does not support more than "moderate" limitations in plaintiff's social functioning, in part because "at the hearing, the claimant testified on his own behalf and adhered to proper hearing decorum." (AT 21.) Similarly, the ALJ determined that the record does not support more than moderate limitations in plaintiff's concentration, persistence, or pace, in part because "when questioned at the hearing, the claimant appeared to process the questions without difficulty [and] responded to the questions appropriately and without delay." (Id.)

iv. **Third party testimony**

"[C]ompetent lay witness testimony cannot be disregarded without comment" and "in order to discount competent lay witness testimony, the ALJ must give reasons that are germane to each witness." Molina, 674 F.3d at 1114 (internal quotation and citation omitted). Here, the ALJ summarized plaintiff's mother's statements in detail, clearly indicating that she considered the information. (See AT 27, 318-27.) Moreover, these statements essentially echoed plaintiff's own testimony and, as discussed above, the ALJ already provided specific, clear, and convincing reasons for discounting plaintiff's testimony, which are equally germane to the third-party testimony. As such, any error in not explicitly re-stating, or incorporating by reference, the reasons given for discounting plaintiff's testimony with respect to plaintiff's mother was harmless and remand is not warranted. See Molina, 674 F.3d at 1115-22.

3. *Whether the RFC determination was supported by substantial evidence*

For the reasons discussed above, the court finds that the ALJ appropriately evaluated the medical opinion evidence and plaintiff's credibility. As such, plaintiff's argument that the RFC is without substantial evidentiary support is not well taken.

## V. CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 18) be DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 24) be GRANTED.
3. The final decision of the Commissioner be AFFIRMED, and judgment be entered for the Commissioner.
4. The Clerk of Court be ordered to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: January 10, 2019

_/s/ Carolyn K. Delaney_
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE